Not for Publication

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| S.Y., <br><br> Plaintiff, <br><br> v. <br><br> ROMAN CATHOLIC DIOCESE OF PATERSON, SALESIANS OF DON BOSCO, AND DON BOSCO TECHNICAL HIGH SCHOOL <br><br> Defendants. | Civil Action No. 20-2605 (ES) (CLW) <br><br> OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is defendant Salesians of Don Bosco's (the "Salesians") motion to dismiss plaintiff S.Y.'s ("Plaintiff") complaint. (D.E. No. 6 ("Motion")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1. As set forth below, the Court DENIES the Salesians's Motion.

**I.     BACKGROUND**

Plaintiff initially brought this civil suit in the Superior Court of New Jersey in Passaic County on behalf of himself and all others similarly situated against the Salesians, Roman Catholic Diocese of Paterson, and Don Bosco Technical High School. (D.E. No. 1-1 ("Complaint" or "Compl.")). On March 1, 2020, the Salesians removed the action to this Court, invoking diversity jurisdiction under 28 U.S.C. § 1332(a)(1). (D.E. No. 1, Notice of Removal, ¶ 4). On September 30, 2020, Plaintiff voluntarily dismissed Roman Catholic Diocese of Paterson from the case. (D.E.

No. 3). The remaining defendants in this instant case are the Salesians and Don Bosco Technical High School.

As alleged in the Complaint, from approximately 1973 to 1975, when Plaintiff was about thirteen to fifteen years old, he attended Don Bosco Technical High School. (Compl. ¶ 37). At that time, Father Sean Rooney was a priest and chemistry teacher at the school. (*Id.* ¶ 38). Plaintiff alleges that, shortly after their first meeting, Father Rooney began sexually assaulting and abusing him at school. (*Id.* ¶¶ 39 & 41). Plaintiff alleges that Father Rooney "forc[ed] Plaintiff to watch pornography, shower[ed] with Plaintiff, expos[ed] his penis to Plaintiff, masturbate[ed] Plaintiff, perform[ed] oral sex on Plaintiff, ejaculate[ed] on Plaintiff's body, forc[ed] Plaintiff to ejaculate on his body, and digitally penetrat[ed] Plaintiff's rectum." (*Id.* ¶ 40). These actions, Plaintiff alleges, constitute crimes of a sexual nature against him. (*Id.* ¶¶ 36–42).

Further, Plaintiff claims that the defendants did not fulfill their duties to use reasonable care to protect Plaintiff from foreseeable harm by their agent or employee, Father Rooney. They had such a duty, Plaintiff alleges, because the Salesians and Don Bosco Technical High School had a special relationship with him, as a Catholic follower and student, as well as with Father Rooney, as an employee or agent. (*Id.* ¶¶ 10–13, 20–21 & 27–29).

Relying on Section 2A:14-2b of the New Jersey revival statute, which retroactively extends the statute of limitations resulting from a "crime of a sexual nature," Plaintiff alleges negligence claims against each defendant. (*Id.* ¶¶ 81–89, Counts I–III). The Salesians moves to dismiss the Complaint in its entirety, arguing that Section 2A:14-26 violates the Due Process Clause of the New Jersey Constitution, and that Plaintiff fails to allege sufficient facts under Federal Rule of Civil Procedure 12(b)(6). (*See generally* D.E. No. 6-1 ("Def. Mov. Br.")). In the alternative, the Salesians asks the Court to strike certain allegations in the Complaint regarding the Holy See,

which is not a party to this action, as immaterial, impertinent, and scandalous. (*Id.* at 12–15). Plaintiff filed an opposition (D.E. No. 13 ("Pl. Opp. Br.")), to which Salesians replied (D.E. No. 16 ("Def. Reply Br.")).

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, and the burden is on the defendant to show that the plaintiff has not stated a facially plausible claim, *see Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).

Determining whether there is "a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "All allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). But a court does not accept as true the complaint's legal conclusions. *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). In the Third Circuit, courts' inquiry into a Rule 12(b)(6) motion is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing

the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus*, 641 F.3d at 563.

Moreover, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case." (citations and internal quotation marks omitted)).

Finally, the Third Circuit has permitted consideration of whether a claim is barred by the statute of limitations in the context of a motion to dismiss where the viability of such defense may be discerned from the complaint itself, *i.e.*, where the facts as pleaded demonstrate the untimeliness of the claim.  *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384, n.1 (3d Cir. 1994).

### B. Motion to Strike

Pursuant to Federal Rule of Civil Procedure 12(f), the Court may, upon motion or *sua sponte*, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  "The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising from a plaintiff's complaint any redundant, immaterial, impertinent, or scandalous matter which will not have any possible bearing on the outcome of the litigation." *Garlanger v. Verbeke*, 223 F.Supp.2d 596, 609 (D.N.J. 2002) (internal quotation marks omitted).

However, "[b]ecause of the drastic nature of the remedy, . . . motions to strike are usually 'viewed with disfavor' and will generally 'be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'" *Id.* (quoting *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993)).

### III.   DISCUSSION

Section 2A:14-2b of New Jersey Statutes is part of an act that is commonly known as New Jersey's Child Victims Act, and it "eliminate[s] the statute of limitations in civil actions for sexual abuse, expand[s] the categories of defendants who are potentially liable in these actions, and codif[ies] the liability of public entities in these actions." Statement for S. 477, 218th Leg. (N.J. 2019) (enacted). The pertinent part of Section 2A:14-2b states the following:

> Notwithstanding the statute of limitations provisions of N.J.S.2A:14-2, section 2 of P.L.2019, c.120 (C.2A:14-2a), section 1 of P.L. 1964, c.214 (C.2A:14-2.1), or any other statute, an action at law for an injury resulting from the commission of sexual assault, any other crime of a sexual nature, a prohibited sexual act as defined in section 2 of P.L.1992, c.7 (C.2A:30B-2), or sexual abuse as defined in section 1 of P.L.1992, c.109 (C.2A:61B-1), that occurred prior to the effective date of P.L.2019, c.120 (C.2A:14-2a et al.), and which action would otherwise be barred through application of the statute of limitations, may be commenced within two years immediately following the effective date.

N.J. Stat. Ann. § 2A:14-2b(a).

Section 2A:14-2b creates a two-year window from December 1, 2019, the date the law became effective, "for lawsuits to be filed for acts of sexual abuse that occurred prior to the bill's effective date which would otherwise be time-barred." Statement for S. 477, 218th Leg. (N.J. 2019) (enacted). Here, the Complaint was filed on February 7, 2020, well within Section 2A:14-2b's two-year window. But because the Complaint alleges claims based on events occurred from approximately 1973 to 1975, those claims would have been time-barred if not for Section 2A:14-2b. (*See* Compl. ¶ 38).

5

In its Motion, the Salesians argues that Section 2A:14–2b violates its rights to due process under the New Jersey Constitution. (Def. Mov. Br. at 5–9). The Salesians contends that, under the New Jersey Constitution, "statute of limitations in civil cases created vested rights of which litigants cannot be deprived." (Def. Mov. Br. at 5; Def. Reply Br. at 4 (quoting *State v. Short*, 618 A.2d 316, 320 (N.J. 1993); and then citing *State v. Standard Oil Co.*, 74 A.2d 565, 572 (N.J. 1950))). According to the Salesians, when confronted with a statute reviving time-barred common-law claims sounding in tort, like the claims at issue here, the New Jersey Supreme Court would follow *Standard Oil* and find Section 2A:14-2b unconstitutional under the New Jersey Constitution. (*See* Def. Mov. Br. at 7–9).

In response, Plaintiff argues that *Standard Oil* is limited to "effect of lapse of time upon a claim sounding in contract." (Pl. Opp. Br. at 5 (quoting in *Panzino v. Cont'l Can Co.*, 364 A.2d 1043, 1046 (N.J. 1976)). Thus, with a claim sounding in common law torts, Plaintiff contends that "passage of the limitation period simply eliminates a procedural remedy, not a substantive right." (*Id.* at 6 (citing *Short v. Short*, 858 A.2d 571, 575)). Plaintiff further argues that the Salesians fails to meet its burden to establish that a statute's retroactive application would result in a "manifest injustice." (*Id.* at 12). Indeed, according to Plaintiff, Section 2A:14-2b "cures a great injustice in which survivors of childhood sexual abuse, who typically require years to come to terms with the effect of such abuse, have been denied a remedy for the heinous acts committed upon them." (*Id.* at 3).

A. **Abstention**

The Court first addresses a preliminary issue—whether it should abstain from the exercise of federal jurisdiction. Defendant removed the instant action from the New Jersey Superior Court[1]

---

[1] While Plaintiff did not timely raise the issue and the Court cannot remand the case *sua sponte* on this ground, the Court notes that the removal was improper as it violated the forum-defendant rule. *See* 28 U.S.C. § 1441(b)(2)

and asks this Court to invalidate Section 2A:14-2b based on the New Jersey Constitution. In doing so, Defendant does not raise any argument based on the United States Constitution. Indeed, Defendant admits that "claim-revival statutes generally do not contravene the Due Process Clause in the Fourteenth Amendment to the United States Constitution," but argues that the instant case should be dismissed because "[New Jersey's] Constitution provides 'more due process protections' than those afforded by the United States Constitution." (Def. Mov. Br. at 5 (citing *Jamgochian v. N.J. State Parole Bd.*, 952 A.2d 1060, 1070 (N.J. 2008))).

As a court sitting in diversity, the Court is well aware of its limited role—it must apply the substantive law of the state whose laws govern the action. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 661 (3d Cir. 1980). Section 2A:14-2b, the constitutionality of which has not been addressed by New Jersey's highest court,[2] clearly involves a matter affecting an important public policy of the State of New Jersey. "Principles of federalism implicit in the United States Constitution dictate that, whenever possible, state courts should be given the opportunity to interpret their state constitutions." *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478 (3d Cir. 1998). Indeed, the Supreme Court of United States has warned against "premature adjudication" of federal constitutional questions when a federal court is asked to invalidate a state law. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 79 (1997). Abstention doctrines also require federal courts to allow the state courts,

---

("A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."). At the time of removal, at least defendant Roman Catholic Diocese of Paterson "is organized as a not-for-profit corporation under the laws of the State of New Jersey." (Notice of Removal ¶ 7).

[2] To the Court's knowledge, Judge Paul Boggard of the Superior Court of New Jersey, Morris County, upheld the constitutionality of Section 2A:14-2b. *See T.M. v. Order of St Benedict of N.J., Inc.*, MRS-L-0399-17, LCV2020939413 (N.J. Sup. Ct., Law Division) (order dated May 26, 2020, stating that "motion to dismiss on statute of limitations grounds, constitutionality grounds [is]. . . denied"). The Court does not consider Judge Boggard's holding in this opinion because Judge Boggard's opinion was issued during oral argument and is not available to the public.

if possible, to address in the first instance questions of state constitutional law. *Id.*; *see also Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941). To proceed otherwise, federal courts risk "friction-generating error when [the federal court] endeavors to construe a novel state Act not yet reviewed by the State's highest court." *Arizonans for Official English*, 520 U.S. at 79.

With the Supreme Court's warnings in mind, the Court notes that, while the Salesians asks the Court to enter a declaratory judgment and invalidate Section 2A:14-2b based on the New Jersey Constitution, it is axiomatic that the Court's jurisdiction must be based on the Complaint, which seeks only legal relief. (*See generally* Compl.). This distinction is important because a federal district court has greater discretion to decline actions for declaratory judgments. *Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 227 (3d Cir. 2017). When an action seeks legal relief, however, federal courts have a "virtually unflagging obligation" to exercise jurisdiction, subject only to a few "extraordinary and narrow exception[s]." *Id.* (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). One such "extraordinary and narrow exceptions" is potentially implicated here. That is, abstention is appropriate where "there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colo. River*, 424 U.S. at 814. This type of abstention involves situations where "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id.* (citing *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)).

The Court finds that the *Burford* abstention doctrine does not apply in this instant case, nor is any other abstention doctrine. Specifically, as will be explained below, the Court finds that, while this case involves a state law on a matter of substantial public concern, with respect to the

instant case and arguments presented herein, the law on New Jersey's Due Process protection guaranteed by its Constitution as applied to a statute reviving time-barred claims appears to be settled. The Court thus addresses the parties' arguments on the merits regarding whether Section 2A:14-2b violated the New Jersey Constitution.

### B. Constitutionality

Federal courts sitting in diversity "must apply the substantive law of the state whose laws govern the action." *City of Philadelphia v. Lead Indus. Ass'n, Inc.*, 994 F.2d 112, 123 (3d Cir. 1993). Where, as here, "the state's highest court has not addressed the precise question presented, a federal court must predict how the state's highest court would resolve the issue." *Id.* In so doing, federal courts "must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Covington v. Cont'l Gen. Tire, Inc.*, 381 F.3d 216, 218 (3d Cir. 2004) (quoting *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993)). To carry out this obligation, "it is critical that the federal court do all within its power to view the problem before it as a state court would, and not through the eyes of a court steeped in federal law." *Packard*, 994 F.2d at 1047. That is, a federal court "may not impose [its] own view of what state law should be, nor expand state law in ways not foreshadowed by state precedent." *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 217 (3d Cir. 2010) (internal citations and quotation marks omitted).

New Jersey law generally "favors prospective application of a new statute." *James v. N.J. Mfrs. Ins. Co.*, 83 A.3d 70, 72 (N.J. 2014). But a statute should be applied retroactively when, first, "the Legislature intended to give the statute retroactive application," and, second, "the retroactive application is [not] an unconstitutional interference with 'vested rights' [and] will [not]

9

result in a 'manifest injustice.'" *Johnson v. Roselle EZ Quick LLC*, 143 A.3d 254, 264 (N.J. 2016) (quoting *Twiss v. State*, 591 A.2d 913, 915–16 (N.J. 1991)); *see also R.A. v. W. Essex Reg'l Sch. Dist. Bd. of Educ.*, No. A-0329-19, 2021 WL 3854203, at *10 (N.J. Super. Ct. App. Div. Aug. 30, 2021).

Here, Section 2A:14-2b, which revives previously time-barred claims based on injuries caused by certain sexual offenses, is explicitly a retroactive extension of the statute of limitations for those claims. The parties do not dispute, and the Court indeed finds, that the New Jersey Legislature evinced a clear intent to allow, within a two-year window, claims that arise from events "occurred prior to the bill's effective date which would otherwise be time-barred." Statement for S. 477, 218th Leg.; (*see* Def. Mov. Br. at 1; Pl. Opp. Br at 2). Nor does the Salesians argue that the application of Section 2A:14-2b will result in a "manifest injustice." Indeed, in response to Plaintiff's argument that the Salesians fails to meet its burden to establish "manifest injustice," the Salesians contends that Plaintiff's argument "is entirely beside the point." (Def. Reply Br. at 7). According to the Salesians, "[w]hether or not [Section] 2A:14-2b represents good policy, it invades the Salesians' vested right in repose with respect to Plaintiff's decades-old claims." (*Id.*). It is thus clear that the sole basis for the Salesians's challenge to the constitutionality of Section 2A:14-2B is that the statute impairs the Salesian's "vested rights" created by the expiration of the statute of limitations in violation of New Jersey's Due Process Clause.

The Supreme Court of New Jersey first addressed this issue in *Standard Oil*. 74 A.2d 565. There, under an amended escheat statute, the State sought to escheat, *inter alia*, unpaid dividends, shares of stock, and unpaid wages of former employees of defendant Standard Oil. *Id.* at 569. The statute provided that the State had the power to escheat such property if it remained unclaimed and the whereabouts of the owner remained unknown for fourteen successive years. *Id.* at 568. Prior

10

to the amendment, however, such action would have been barred after the lapse of six years from the accrual of the cause of action. *Id.* at 573. The Supreme Court of New Jersey ruled in favor of Standard Oil, the corporate defendant. *Id.* While fully recognizing that the settled rule under federal law was that the revival of a time-barred action by a state legislature did not violate the Fourteenth Amendment, the court nevertheless held that, under New Jersey law, "where a right of action has become barred under existing law, the statutory defense constitutes a vested right which is proof against legislative impairment." *Id*. at 570–71.

However, the Supreme Court of New Jersey has explicitly stated that this aspect of *Standard Oil* should not be accorded the "comprehensive amplitude" to mean that the limitation bar necessarily creates "vested rights," the taking of which could amount to deprivation without due process of law. *Panzino*, 364 A.2d at 1046. Rather, the holding of *Standard Oil* "should be confined to the particular issue before the [court] in that case, i.e., the effect of lapse of time upon a claim sounding in contract." *Id*. The court explained that, unlike *Standard Oil*, the claim at issue in *Panzino* was grounded in statute—New Jersey's Workmen's Compensation Act. *Id.* The statute of limitations at issue was merely a "jurisdictional prerequisite[] to agency action," which the Legislature was free to change in order to "enlarge the availability of [the] statutory right to compensation for occupational disease by removing the five-year limitation period." *Id.* at 1046–47.

The Salesians argues that *Panzino* "carved out an exception to the rule set forth in *Standard Oil*" and recognized a distinction "between common-law claims and statutory claims." (Def. Mov. Br. at 6–7). Under the Salesians's interpretation, the Supreme Court of New Jersey would find it permissible to revive time-bared statutory claims but not a time-barred common-law claims sounding in torts, like the claims in the instant case. (*Id.*). As support, the Salesians argues that

11

*Panzino* explained that "*Standard Oil* considered the effect of the running of the statute of limitations upon a contractual obligation—*a chose in action*." (*Id.* at 7–8 (quoting *Panzino*, 364 A.2d at 304 (emphasis the Salesians's)). Because a common-law tort claim, such as Plaintiff's negligence claims, "like a claim for breach of contract, is a chose in action," the Salesians contends that the passage of time conferred to the Salesians "vested rights" in repose. (*Id.* at 8). In response, Plaintiff argues that *Panzino* is the rule and *Standard Oil* is the exception. (Pl. Opp. Br. at 5). That is, "*Panzino* clarifies the rule that the statute of limitations does not create a vested right[] and made clear that it is *Standard Oil* which represents a limited exception to that rule for contract actions." (*Id.*). The Court agrees with Plaintiff.

The Court is not persuaded that the analysis of *Panzino* was in anyway based on the definition of "a chose in action." This term appeared once in the entire opinion, where the court explained the specific contract claim at issue in *Standard Oil* and stated that it "considered the effect of the running of the statute of limitations upon a contractual obligation—a chose in action." *Panzino*, 364 A.2d at 1046. In other words, the term "a chose in action," as used in *Standard Oil* and *Panzino*, encompassed a specific type of contractual obligation. In explicit and unambiguous terms, the court then held that *Standard Oil* should be confined to "the effect of lapse of time upon a claim sounding in contract." *Id.* Because Panzino's claim was "a right born of statute" and did "not spring from *contract*," the court held that *Standard Oil* was inapposite. *Id.* (emphasis added).

As the parties recognize, New Jersey lower courts have repeatedly interpreted *Panzino* to mean that *Standard Oil* is limited to claims sounding in contract. *See Short*, 858 A.2d at 574; *cert. denied*, 866 A.2d 985 (2005); *D.J.L. v. Armour Pharm. Co.*, 704 A.2d 104, 115 (Law. Div. 1997); *see also Bush v. Johns-Manville Prod. Corp.*, 381 A.2d 65, 69 (App. Div. 1977) (J. Kole) (concurring). The Salesians argues that New Jersey lower courts' decisions are not binding on this

12

Court and that Plaintiff's reliance on them are misplaced. (Def. Mov. Br. at 6–7; Def. Reply Br. at 6). It also argues that *Short* is inapposite in this case because it involved the retroactive extension of the statutory of limitation for a statutory claim. (Def. Mov. Br. at 6–7; Def. Reply Br. at 6). The Court rejects both arguments.

While decisions of New Jersey lower courts are not controlling, "[w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. A.T. & T. Co.*, 311 U.S. 223, 237 (1940). A district court may also look to the decisions of a trial court as "a datum for ascertaining state law." *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 361 (3d Cir. 2007). The significance of *Short*, which was decided by the Appellate Division, is in how *Short* clarified the reach of *Standard Oil*—*Standard Oil* did not apply in *Short*, which involved claims under New Jersey's Wrongful Death Act, because *Standard Oil* is "limited to 'a claim sounding in contract.'" *Short*, 858 A.2d at 575. Likewise, the Superior Court's recognition in *D.J.L.* that *Panzino* "acknowledges a difference between rights obtained through statutory construction [] versus those created by agreement through arms length negotiations" is a helpful datum, with which the Salesians provides no persuasive data to show that the Supreme Court of New Jersey will disagree. Accordingly, the Court agrees with Plaintiff that *Panzino* limited *Standard Oil* to claims sounding in contract.

Furthermore, the Court is not persuaded that time-barred tort claims created vested rights such that they are *categorically* immune from statutory revival in New Jersey. *See Pa. Greyhound Lines, Inc. v. Rosenthal*, 102 A.2d 587, 590–91 (N.J. 1954) (holding that New Jersey's Joint Tortfeasors Contribution Law, which "embraces antecedent joint tortious acts for omissions" was

13

constitutional and rejecting Rosenthal's argument that his "freedom from liability, although negative in nature, is a vested right under existing law"). To the contrary, New Jersey courts have recognized that they "have had difficulty in providing a clear and consistent definition of th[e] term [vested right] in the specific context of legislative retroactivity." *Nobrega v. Edison Glen Assocs.*, 772 A.2d 368, 379 (N.J. 2001) (collecting cases). Nevertheless, the caselaw provides sufficient guidance for this instant Motion.

Since its decision in *Standard Oil*, the Supreme Court of New Jersey has generally recognized that the term "vested right" is "an elusive concept" that is somewhat conclusory—"a right is vested when it has been so far perfected that it cannot be taken away by statute." *Rothman v. Rothman*, 320 A.2d 496, 499 (N.J. 1974) (quoting Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv. L. Rev. 692, 696 (1960)); *see also Nobrega*, 772 A.2d at 379–80; *Pa. Greyhound Lines, Inc.*, 102 A.2d at 593; *Twiss*, 591 A.2d at 917. The Supreme Court of New Jersey has explained that the general concept of the term "vested rights" is "that of a present fixed interest which in right reason and natural justice should be protected against arbitrary state action." *Pa. Greyhound Lines, Inc.*, 102 A.2d at 593; *see also Twiss*, 591 A.2d at 917 ("'[V]ested right' encompasses a fixed interest entitled to protection from state action."). New Jersey lower courts have interpreted that concept to mean that, "to become vested, a right must have become a title, legal or equitable, to the present or future enjoyment of property, or to the present for future enforcement of a demand, or a legal exemption from a demand made by another." *Levin v. Township of Livingston*, 163 A.2d 221, 225 (Super. Div. 1960), *aff'd in part, rev'd in part*, 173 A.2d 391 (N.J. 1961) (internal citations omitted). But a "mere expectation as may be based upon an anticipated continuance of the present general laws" is not a vested right, *id.*, and "[t]here can be no vested right in the continued existence of a statute or rule of the common

14

law which precludes its change or repeal," *Magierowski v. Buckley*, 121 A.2d 749, 762 (App. Div. 1956).

Relevant to the instant motion, New Jersey precedent clearly establishes that, like with federal law, legislation "readjusting rights and burdens" is not unlawful "solely because it upsets otherwise settled expectations." *Philips v. Curiale*, 608 A.2d 895, 902 (N.J. 1992) (quoting *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 16 (1976)). "This is true even though the effect of the legislation is to impose a new duty or liability based on past acts." *Id.*; *see Rothman v. Rothman*, 320 A.2d 496, 499–503 (1974) (balancing the public interest against the private right and holding that the application of the statute authorizing an equitable distribution of marital assets upon divorce did not offend the requirement of due process); *State Trooper Fraternal Ass'n of N.J., Inc. v. State*, 692 A.2d 519, 528–29 (N.J. 1997) (balancing the public interest against the impact on former state troopers whose contractually secured retroactive salary payments were eliminated by Department of Personnel regulation and holding that "the contractual interest at stake is not a vested right"). This is because of "principles of substantive due process that define the sovereign powers of government—when there is an evil that deserves redress, the Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object." *Philips*, 608 A.2d at 903 (quoting *Silver v. Silver*, 280 U.S. 117, 122 (1929)). To this end, "retroactive civil legislation generally does not violate due process unless the consequences are 'particularly harsh and oppressive.'" *Id.* at 902 (quoting *State v. Ventron Corp.*, 469 A.2d 150 (N.J. 1983)).

Here, the Salesians does not appear to argue or provide any factual basis to suggest that the Child Victims Act's revival of the time-barred claims was in any way egregious, harsh, or oppressive. Nor does it argue that the public interest promoted by the Act was outweighed by the

impact it caused to the defendants. Rather, the sole basis of its objection to the Act is because the Act retroactively revived claims that "have for decades been indisputably barred." (Def. Reply Br. at 7). In other words, the Salesians argues that the revival statute upsets its "settled expectations" and "anticipated continuance of the present general laws." *See Philips*, 608 A.2d at 902; *Levin*, 163 A.2d at 225. But, without more, that is precisely the type of "expectation" that the New Jersey courts have repeatedly held insufficient to invalidate otherwise legitimate legislation. *Philips*, 608 A.2d at 903–04; *D.J.L.*, 704 A.2d at 115 ("An 'expectation,' or a mere 'hope,' even when reasonably based upon present law, is not a vested right.").

Accordingly, the Court does not find that Section 2A:14-2b's revival of time-barred tort claims violated the Salesians's due process rights protected under the New Jersey Constitution. *See W.F. v. Roman Cath. Diocese of Paterson*, No. 20-7020, 2021 WL 2500616 (D.N.J. June 7, 2021) (upholding the constitutionality of Section 2A:14-2b based on clear legislative intent and a lack of any due process violation or manifest injustice).

### C. Sufficiency of the Allegations

As a preliminary matter, the Court notes that the parties' briefs are woefully insufficient in addressing whether the Complaint meets the Rule 12(b)(6) standard. For example, the Salesians filed the wrong moving brief, which discusses the complaint in a different case concerning a plaintiff named "W.F.," who alleges sexual abuse by "Brother Alan Scheneman." (Def. Mov. Br. at 1). That case is currently pending before the Honorable Madeline Cox Arleo, U.S.D.J. *W.F. v. Roman Catholic Diocese of Paterson*, No. 20-7020 (D.N.J.). Moreover, Plaintiff declines to respond to the substance of the Salesians's arguments in his opposition brief, contending that the Salesians's arguments do not apply to the facts of this case and that, based on the erroneously filed brief alone, the Salesians's motion must be "denied on its face." (Pl. Opp. Br. at 1 & 13). In

response, the Salesians addresses the correct Complaint for the first time in its reply brief and argues that "the material allegations of the [c]omplaint in *W.F.* and the Complaint in this case are identical," such that the arguments in its moving brief still apply. (Def. Reply Br. at 8–9). That is, the Salesians argues that the Complaint alleges that the defendants "knew or should have known" that the alleged abuser had "a propensity to engage in the sexual abuse of children" without sufficient factual support. (*Id.*). Plaintiff did not have a chance to respond to these arguments.

Despite the insufficient briefing, the Court finds that, based on the well-pleaded factual allegations in the Complaint, reasonable inferences can be drawn to sustain Plaintiff's negligence claims against the defendants. The crux of the Salesians's argument is that the Complaint does not plausibly plead what the Salesians knew or should have known to support the element of breach. (*See* Def. Mov. Br. at 10–11; Def. Reply Br. at 8–9). However, the Complaint includes detailed allegations regarding the Holy See's documented policy and practice on handling accusations of child sexual abuse, and that policy was allegedly directed to the Holy See's agents, including the defendants. For example, in 1922 and 1962, the Holy See allegedly released a few confidential documents that mandated procedures for "Holy See's agents, including the [d]efendants" to use when handling cases of child sexual abuse by clergy. (Compl. ¶¶ 54–55). According to the Complaint, these documents, *inter alia*, showed that "the Holy See and its agents to whom the documents w[ere] directed had knowledge that there was a systemic problem of Catholic clergy sexually molesting children" but "created a shroud of secrecy insulating [p]riests from consequences." (*Id.* ¶¶ 56 & 59). Such policy and practice includes the "transfer and reassignment of clergy known or suspected to abuse minors to deflect attention from reports or allegations of child sexual abuse." (*Id.* ¶ 62(b)).

17

Against the Catholic Church's knowledge of a prevalent problem and its general policy and practice, the Complaint includes specific accusations against the alleged abuser, Father Rooney, and his subsequent transfer to Plaintiff's school. From approximately 1968 to 1971, Father Rooney served as a financial administrator and teacher at Salesian Junior Seminary, where he allegedly was accused of "fondling and masturbating a fourteen[-]year-old seminary student." (*Id.* ¶ 45). Subsequently but at an unspecified time, Father Rooney was transferred to Plaintiff's school, Don Bosco Technical High School. (*See id.* ¶ 63). When Plaintiff attended Don Bosco Technical High School from 1973 to 1975, Father Rooney was a priest and chemistry teacher at the school. (*Id.* ¶¶ 37–38). Plaintiff alleges that Father Rooney's transfer and reassignment "were pursuant to the policy and practice designed to conceal sexual abuse of clergy and protected the [d]efendants from scandal." (*Id.* ¶ 63).

Accepting all allegations as true and viewing them in the light most favorable to Plaintiff, the Court thus finds that these allegations support a reasonable inference that the harm sustained by Plaintiff was foreseeable. The Court also denies the Salesians's alternative motion to strike allegations regarding sexual abuse in the Catholic Church generally. (Def. Reply Br. at 9 (citing Compl. ¶¶ 52–70); *see* Def. Mov. Br. at 13–15). As explained above, the Catholic Church's alleged policy and practice on handling child sexual abuse accusations is central to Plaintiff's claim that the defendants failed to exercise reasonable care to protect Plaintiff from the foreseeable risk imposed by Father Rooney, who was allegedly transferred to Don Bosco Technical High School after being accused of sexually abuse a minor student.[3]

---

[3] While the Motion was pending, on December 14, 2020, CHILD USA filed a motion for leave to appear as amicus curiae, along with an amicus curiae brief arguing that Section 2A:14-26 is constitutional. (*See generally* D.E. No. 15). The Court denies CHILD USA's motion. CHILD USA's request constitutes "a matter to be decided in this Court's discretion." *Hospira, Inc. v. Sandoz, Inc.*, No. 09-4591, 2014 WL 794589, at *4 (D.N.J. Feb. 27, 2014). Unlike the appellate level, where the filing of amicus briefs has become standard procedure, "[a]t the trial level, where issues of fact as well as law predominate, the aid of amicus curiae may be less appropriate than at the appellate level." *U.S. v. Alkaabi*, 223 F.Supp.2d 583, n.16 (2002) (quoting *Yip v. Pagano*, 606 F. Supp. 1566, 1568 (D.N.J. 1985)); *see*

## IV. CONCLUSION

For the reasons set forth above, the Court DENIES the Salesians's Motion and CHILD USA's motion for leave to appear as *amicus curiae*. (D.E. Nos. 6 & 15). An appropriate Order accompanies this Opinion.

Date: September 30, 2021                                          *s/Esther Salas*
                                                                  **Esther Salas, U.S.D.J.**

---

*Neonatology Assocs., P.A. v. Comm'r of Internal Revenue*, 293 F.3d 128, 133 (3d Cir. 2002) (stating that the appellate court "would be well advised to grant motions for leave to file amicus briefs unless it is obvious that the proposed briefs do not meet Rule 29's criteria as broadly interpreted")). Nevertheless, "[l]eave to so file may be granted if a court desires assistance in the understanding of an issue, and if the information offered is timely and useful." *Hospira*, 2014 WL 794589, at * 4. Because the Court requires no further assistance in resolving the parties' disputes in this Motion, it denies CHILD USA's motion and will not allow CHILD USA's amicus brief.