<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| S.Y.,<br><br>          Plaintiff,<br><br>    v.<br><br>ROMAN CATHOLIC DIOCESE OF<br>PATERSON, *et al.*,<br><br>          Defendants. | Case No. 20cv2605 (EP) (CLW)<br><br>**OPINION** |

**PADIN, District Judge.**

Defendant Salesians of Don Bosco ("Defendant" or the "Salesian Society") moves to exclude the testimony of Plaintiff S.Y.'s ("Plaintiff" or "S.Y.") standard of care expert, as well as for summary judgment on the sole negligence claim brought against it. The Court decides the motions on the papers. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78.1. For the reasons set forth below, Defendant's motion to exclude the expert testimony of Plaintiff's standard of care expert will be **DENIED** *in part* and **GRANTED** *in part*; and Defendant's motion for summary judgment will be **DENIED**.

I.   **BACKGROUND**

A.  **Factual Background[1][2]**

Between approximately 1973 and 1975, Plaintiff was enrolled as a student at Don Bosco

Technical High School ("Don Bosco") in Paterson, New Jersey managed by Defendant.  D.E. 73

("Def. SOMF") ¶ 1; D.E. 63-1 ("Pl. SOMF") at 4, ¶ 1.  During this timeframe, Father Rooney

("Rooney")[3] was a teacher at Don Bosco.  Def. SOMF ¶ 1.  Over the course of these two years,

on over 100 occasions, Rooney sexually abused Plaintiff in the Don Bosco's locker room

showers and clergy living quarters.  *See* Def. SOMF ¶ 1; Pl. SOMF at 5-6, ¶¶ 8, 12; DE. 63-3,

Ex. A ("S.Y. Dep.") at 146:7-10.

Plaintiff did not report the sexual abuse to anyone.  Def. SOMF ¶ 3.  However, Plaintiff

testified that, on one occasion, a priest or brother[4] walked into the locked locker room showers

where Rooney was sexually abusing Plaintiff.  Pl. SOMF at 5-6, ¶¶ 9-11.  Plaintiff also testified

that, on several occasions, other clergy observed Plaintiff going to and leaving from the clergy

living quarters with Rooney, despite the prohibition against students accessing the clergy living

---

[1]  Except where noted, the facts in this section are drawn from the undisputed statements contained in the parties' Rule 56.1 statements.  A standalone citation to one party's Rule 56.1 statement denotes that the Court has deemed the underlying factual allegation undisputed.

[2]  Plaintiff properly attached a counterstatement of disputed material facts to his opposition papers.  Flouting the explicit directive of the Court's Local Rules, Defendant failed to attach a responsive statement of material facts to its reply papers.  *See* L.Civ.R. 56.1(a) ("In addition, the opponent may also furnish a supplemental statement of disputed material facts, . . . if necessary to substantiate the factual basis for opposition.  The movant shall respond to any such supplemental statement of disputed material facts as above, with its reply papers.").  Despite Defendant's failure, the Court has reviewed the record to ensure that this case is properly resolved on the merits.  *See Boyd v. Riggs Distler & Co.*, 2022 U.S. Dist. LEXIS 233060, at *2 n.1 (Dec. 29, 2022) (resolving summary judgment motion on merits, notwithstanding movant's failure to respond to nonmovant's counterstatement of disputed material facts); *Glass v. UPS*, 2023 U.S. Dist. LEXIS 113117, at *11-12 n.7 (D.N.J. June 30, 2023) (same).

[3]  Not a party in this case.

[4]  Term for a consecrated lay person who lives with Salesian clergy.

quarters.  *See id.* at 6, ¶¶ 15-16.  No clergy reported the sexual abuse that Plaintiff underwent at Don Bosco.

In approximately 2005, Defendant issued a "Wellness Plan" to Rooney, which acknowledged that there were seven known victims that Rooney had sexually abused when the victims were minors.  *Id.* at 7, ¶ 19.  In approximately 2008, Rooney was laicized and stripped of his clerical status.  *Id.* at 7, ¶ 23.

### B.  Procedural Background

Plaintiff first filed the case as a putative class action in the Superior Court of New Jersey, Passaic County, against the Salesian Society, the Roman Catholic Diocese of Paterson (the "Diocese"), and Don Bosco.  D.E. 1-1 ("Complaint" or "Compl.").  A negligence claim was asserted against the Salesian Society, the Diocese, and Don Bosco, respectively.  *Id.*  The Salesian Society subsequently removed the case to this Court, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).  D.E. 1.  Plaintiff voluntarily dismissed the Diocese from the case.[5]  D.E. 3.  The Salesian Society moved to dismiss the Complaint, or, in the alternative, to strike certain allegations from the Complaint.  D.E. 6.  The Court[6] denied the Salesian Society's motion.  D.E. 29.

The Salesian Society[7] now brings two motions.  First, the Salesian Society moves to exclude the expert testimony of Dr. Sherryll Kraizer, Plaintiff's standard of care expert.  D.E. 61-1 ("Exp. Mot.").  Plaintiff opposes.  D.E. 62 ("Exp. Opp'n").  The Salesian Society replies.  D.E. 64 ("Exp. Reply").  Second, the Salesian Society moves for summary judgment on the

---

[5] Don Bosco has not been dismissed from the case; however, no appearance has been made by Defendant Don Bosco before the Court.
[6] District Court Judge Salas.
[7] Unless otherwise noted, references to "Defendant" refer exclusively to the Salesian Society.

negligence claim Plaintiff brings against it.  D.E. 60-1 ("SJ Mot.").  Plaintiff opposes.  D.E. 63 ("SJ Opp'n").  The Salesian Society replies.  D.E. 65 ("SJ Reply").

## II.   MOTION TO EXCLUDE EXPERT TESTIMONY

### A. Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony.  The Federal Rules of Evidence embrace a liberal policy of admissibility, including with respect to expert testimony.  *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008).  So long as the proponent of the expert testimony meets the following three prerequisites, Rule 702 does not bar an expert witness from testifying: (1) the proposed expert is qualified; (2) the proposed evidence will be helpful to the trier of fact;[8] and (3) the proposed evidence is reliable.  Fed. R. Evid. 702.[9]

A witness is qualified to provide expert testimony only if the witness has "specialized expertise" in the testimony's subject matter.  *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003); *see also In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717, 741 (3d Cir. 1994) (affirming rejection of "overly rigorous requirements of expertise" and expressing "satisf[action] with more generalized qualifications"); *Pineda*, 520 F.3d at 244 (proposed expert witness need not be "best qualified").  A witness's testimony "fits" a case if it is more likely than not that it would "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a); *see also United States v. Ford*, 481 F.3d 215, 219 n.6 (3d Cir. 2007) (internal quotation marks omitted) ("[F]it is [primarily] a relevance concern.").  And a witness's

---

[8] Also referred to as the "fit" prerequisite.

[9] The Court applies the current version of Rule 702, which was amended on December 1, 2023. The amendment does not substantively alter Rule 702, but rather "clarifies that the preponderance standard applies to the three reliability-based requirements added in 2000— requirements that many courts have incorrectly determined to be governed by the more permissive Rule 104(b) standard."  Fed. R. Evid. 702 advisory committee's note to 2023 amendments.

testimony is reliable if it is founded on "good grounds," meaning that the testimony is more likely than not "based on sufficient facts or data" derived from "reliable principles and methods" that have been "reliabl[y] appli[ed] . . . to the facts of the case."  Fed. R. Evid. 702(b)-(d); *see also UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 834 (3d Cir. 2020).

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court outlined several non-exclusive factors that a court may consider in determining whether "good grounds" support a witness's testimony, including:

(1) "whether a theory or technique . . . can be (and has been tested)[;]"
(2) "whether the theory or technique has been subjected to peer review and publication[;]"
(3) "the known or potential rate of error[;]"
(4) "the existence and maintenance of standards controlling the technique's operation[;]" and
(5) whether the theory or technique has gained "general acceptance."

509 U.S. 579, 593-94 (1993).  However, the Supreme Court also emphasized that a court's inquiry is "flexible" and relevant factors are case-dependent.  *Id.* at 594; *see also Kannankeril v. Terminix Int'l*, 128 F.3d 802, 806-07 (3d Cir. 1997) (same).  For example, in certain cases, the relevant reliability concerns "may focus upon personal knowledge or experience," rather than "scientific foundations," like those listed above.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999); *see also States v. Fernwood Hotel & Resort*, 2014 U.S. Dist. LEXIS 4997, at *3 (M.D. Pa. Jan. 15, 2014) (holding expert witness's practical and specialized experience rendered opinions sufficiently reliable despite lack of scientific hypothesis or testable theory).

Finally, as long as good grounds for the witness's testimony are shown, the testimony "should be tested by the adversary process—competing expert testimony and active cross-

examination—rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." *United States v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004) (quoting *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998)); *Kannankeril*, 128 F.3d at 806 ("Admissibility decisions focus on the expert's methods and reasoning; credibility decisions arise after admissibility has been determined.").

**B. Discussion**

Defendant attacks all three prerequisites necessary for the admissibility of Dr. Sherryll Kraizer's ("Kraizer")—Plaintiff's proposed standard of care expert—testimony. Exp. Mot. at 1-2. Plaintiff refutes each attack. Exp. Opp'n at 2-3. The Court will exclude the portions of Kraizer's Report that consist of legal conclusions and which merely narrate Plaintiff's deposition testimony because they do not "fit" the case.

*1. Qualification*

Defendant asserts that Kraizer lacks the expertise to testify on: "the general public['s] awareness of the problem of child sexual abuse in the mid[-]1970s[,]" because she "is not a historian and has no expertise in the field of historical analysis." Exp. Mot. at 1, 6-8. Plaintiff responds that Defendant misstates the liberal standard for determining an expert witness's expertise in a given field, as Kraizer merely uses a timeline derived from "academic books, articles, [and] conference speeches" to determine "what youth-serving organizations knew or should have known regarding the risks of sexual predators seizing on their access to children provided by these organizations" in the mid-1970s. Exp. Opp'n at 2, 19-20. The Court agrees with Plaintiff: Kraizer is qualified to testify on matters concerning child abuse prevention.

Defendant's argument that Kraizer is unqualified is a strawman. Kraizer need not be qualified as a historian, as Defendant suggests, to be qualified as "an expert in the field of

prevention, recognition, and reporting of child abuse, sexual harassment, and sexual misconduct," or as an expert "in the standard of care for hiring, retention, policies, and procedures, and supervision of youth-serving organizations about the risks of sexual abuse." *See* Exp. Opp'n at 3.  Kraizer's curriculum vitae demonstrates her specialized knowledge, training, and experience in the field of child abuse prevention.  *See generally* D.E. 62-2, Ex. A ("Kraizer CV") (listing, *inter alia*, Kraizer's extensive experience in consulting and research concerning matters related to child abuse, as well as her experience in providing testimony related to child abuse prevention in over 100 cases).  That Kraizer seeks to speak to matters related to child abuse prevention in the past, rather than in the present, does not make her unqualified.  *See In re Paoli*, 35 F.3d at 742 n.8 (citation omitted) (explaining that qualification prerequisite requires only that an expert witness have "specialized knowledge" regarding the area of testimony, but that this prerequisite is to be interpreted liberally and "a broad range of knowledge, skills, and training qualify an expert as such").

Accordingly, the Court concludes Kraizer is qualified.  *See Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996) ("[I]t is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate.").

### 2.  Fitness

Defendant raises two arguments as to the "fit" prerequisite: (1) because the Salesian Society is not the same entity as the Catholic Church, Kraizer's testimony about what the Catholic Church was aware of is irrelevant; and (2) Kraizer's opinions improperly invade the province of the judge and jury.  Mot. at 1-2, 13-18.  Plaintiff responds: (1) Kraizer's testimony is relevant because the Catholic Church's 1922 and 1962 Instructions addressed religious

communities/orders, like the Salesian Society, as well as dioceses; and (2) Kraizer's opinions concerning the standard of care and whether the Salesian Society complied with that standard are not legal opinions, because Rule 704(a) permits opinions that embrace ultimate issues, and Kraizer's opinions do not weigh into the credibility of Plaintiff's testimony by virtue of Kraizer's reliance on Plaintiff's testimony in forming her opinions in line with Rule 703.  Opp'n at 1-2, 18-25.  The Court partially agrees with Defendant, such that certain portions of Kraizer's opinions, described below, will be excluded.

The "fit" prerequisite requires that an "expert's scientific, technical, or other specialized knowledge . . . help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).  To be helpful, expert testimony must be "sufficiently tied to the facts of the case [such] that it will aid the [factfinder] in resolving a factual dispute."  *U.S. v. Schiff*, 602 F.3d 152, 173 (3d Cir. 2010) (citation and internal quotation marks omitted).  Notably, the Third Circuit has stated that the standard for determining whether an expert's opinions "fit" is "not that much higher than bare relevance."  *In re Paoli*, 35 F.3d at 745.

Here, Kraizer's testimony as to the Catholic Church's knowledge about the risk of child sexual abuse by clergy is relevant, and thus, satisfies the "fit" prerequisite.  Specifically, Kraizer's use of the Catholic Church's 1922 and 1962 Instructions (which discussed child sexual abuse) is appropriate, given that the two documents were addressed to dioceses and religious orders, like the Salesian Society, such that Kraizer's testimony could help the trier of fact in determining the Salesian Society's awareness of the risk of child sexual abuse by clergy. Defendant's concern that Kraizer's testimony equates the Salesian Society with the Catholic Church is not a question of "fit," but rather of how much weight should be given to her

testimony, which is an issue best left for the jury to determine after vigorous cross-examination. Therefore, the Court finds this branch of Kraizer's testimony satisfies the "fit" prerequisite.

While the "fit" prerequisite is not a high bar to meet, it does restrict an expert from testifying "as to a legal standard or whether a party's conduct meets the standard." *Orbital Eng'g, Inc. v. Buchko*, 578 F. Supp. 3d 727, 733 (W.D. Pa. 2022) (citing *Wolfe v. McNeil-PPC, Inc.*, 2011 U.S. Dist. LEXIS 47710, at *25 (E.D. Pa. May 4, 2011) (expert testimony that party was negligent was improper legal opinion)). Thus, a reviewing court must:

> ensure that an expert does not testify as to the governing law of the case. Although Federal Rule of Evidence 704 permits an expert witness to give expert testimony that "embraces an ultimate issue to be decided by the trier of fact," an expert witness is prohibited from rendering a legal opinion. *United States v. Leo*, 941 F.2d 181, 195-96 (3d Cir. 1991). Such testimony is prohibited because it would usurp the District Court's pivotal role in explaining the law to the jury. *First National State Bank v. Reliance Elec. Co.*, 668 F.2d 725, 731 (3d Cir. 1981) (per curiam).

*Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006). But, the Third Circuit has also acknowledged that "the line between admissible and inadmissible expert testimony as to the customs and practices of a particular industry often becomes blurred when the testimony concerns a party's compliance with customs and practices that implicate legal duties." *Id.* at 218.

Here, because certain portions of Kraizer's Report include improper legal conclusions, redactions to the report will ensure that her testimony remains helpful to the trier of fact in assessing Defendant's conduct. *See Krys v. Aaron*, 112 F. Supp 3d 181, 193-95 (D.N.J. 2015) (permitting proposed expert to provide background testimony relevant to industry, "and specifically concerning the customs and business practices" with regard to specific issues of case but redacting legal conclusions). Specifically, while Kraizer may testify as to "whether certain acts would in the abstract be improper and/or inconsistent with a party's legal duties[,]" she

9

cannot "stat[e] that a party did indeed violate an applicable duty through certain actions." *Id.* at 193. Thus, Kraizer's conclusions that Defendant specifically "had an *in loco parentis* duty," "breached" and "failed" its duty, was "grossly negligent," as well as references to Defendant's acts being "negligent" or a "proximate cause" are legal conclusions that must be excluded.

For example, Kraizer's Report includes statements, such as: the Salesian Society "had an *in loco parentis* duty to protect [Plaintiff] . . . [,]" Kraizer Report at 8; the "Salesian Society breached that duty . . . [,]" *id.* at 7, 8; the Salesian Society "failed in that duty[,]" *id.* at 7, 13; the Salesian Society "was grossly negligent in its failure to intervene and protect" Plaintiff, *id.* at 7, 23, 27; and "[t]he repeated and negligent failure of [the Salesian Society] to protect [Plaintiff] was significantly below the standard of care . . . . This failure was a proximate cause of the sexual abuse of [Plaintiff] by Sean Rooney[,]" *id.* at 27. *See, e.g.*, *United States v. Omnicare, Inc.*, 2023 U.S. Dist. LEXIS 58236, at *21 (D.N.J. Mar. 31, 2023) ("Experts may, however, comment on industry customs and standards so long as they do not opine as to compliance with legal duties arising out of those customs and standards."); *Vitamin Energy, Inc. v. Evanston Ins. Co.*, 2023 U.S. Dist. LEXIS 153034, at *11-12 (E.D. Pa. Aug. 29, 2023) (concluding expert "may testify about [] industry customs, practices, and accepted standards but he must be careful to not 'fram[e] his opinions as legal conclusions.' Without question, he cannot testify that [defendant] breached its duty . . . ."). Accordingly, the portions of Kraizer's Report described above will be excluded.[10]

Next, because certain portions of Kraizer's Report merely provide a narrative of Plaintiff's deposition testimony, these portions of the report will be redacted as they do not "fit"

---

[10] This conclusion comports with *A.A. Doe v. Mark Maniaci*, No. 16-cv-12722, D.E. 112 (E.D. Mich. Oct. 12, 2017), which largely denied the defendants' motion to exclude Kraizer's testimony in a child sexual abuse case, except with respect to the portion of Kraizer's testimony that opined "about whether or to what extent the *defendants* owed any legal duty to the plaintiff."

the case.  "Quite simply, the [trier of fact] can review the evidence in the record themselves." *SEC v. Ambassador Advisors, LLC*, 576 F. Supp. 3d 250, 259 (E.D. Pa. 2021) (finding proposed expert's recitation of documents in record did not "fit" the case).  Specifically, the portions of Kraizer's Report citing to Plaintiff's deposition,[11] as well as those portions stating "SY testified,"[12] impermissibly bolster Plaintiff's deposition testimony, given that it is exclusively the trier of fact's role to weigh the credibility of the record evidence.  *See R.D. v. Shohola, Inc.*, 2019 U.S. Dist. LEXIS 136556, at *6 n.2 (M.D. Pa. Aug. 13, 2019) ("While [an expert's] recitation of [the] factual testimony may add a certain academic cachet to this evidence, it is not proper expert testimony."); *United States v. Charley*, 189 F.3d 1251, 1267 (10th Cir. 1999) ("In general, expert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations and therefore does not 'assist the trier of fact' as required by Rule 702.").  Accordingly, the portions of Kraizer's Report that do nothing more than narrate Plaintiff's deposition testimony will be excluded.

### 3. Reliability

Defendant argues that Kraizer's testimony is not based on reliable methodology because Kraizer did not clearly articulate the methodology used in forming her opinions on the applicable standard of care, as well as that she inappropriately relied upon the opinions of another expert without independently assessing their validity.  Exp. Mot. at 1, 3-7.  Plaintiff argues the opposite.  Exp. Opp'n at 2, 15-18.  The Court agrees with Plaintiff.

A review of Kraizer's Report demonstrates that her methodology is sufficiently reliable.  Defendant claims that it is "difficult, if not impossible," to evaluate Kraizer's methodology using

---

[11] Totaling 17 times throughout Kraizer's Report.  *See, e.g.*, Kraizer Report at 6 n.2 ("SY testified the abuse occurred over 100 times.")

[12] *See, e.g.*, Kraizer Report at 16 ("SY testified there were multiple priests who knew he was spending significant time alone with Rooney, in Rooney's quarters.").

the reliability factors outlined in *Daubert* because Kraizer is "incapable of clearly and consistently describing" her methodology.  Exp. Mot. at 4-6.  Plaintiff responds that Kraizer's methodology is "sufficiently explained given the nature of the issue, *i.e.*, the standard of care for youth-serving organizations in protecting children in their custody from harm[,]" and notes that the reliability factors are merely intended to serve as "'useful guideposts,'" which "'may or may not be pertinent in assessing reliability, depending on the nature of the issue . . . .'"  Exp. Opp'n at 15-17 (first quoting *Heller v. Shaw Indus.*, 167 F.3d 146, 152 (3d Cir. 1999); and then quoting *Kumho Tire Co.*, 526 U.S. at 150).

While a court considers the reliability factors outlined in *Daubert* when evaluating the reliability of a particular scientific methodology, the same factors may not be instructive where the proposed testimony is "nonscientific" in nature, like in this case.  *See, e.g.*, *Elcock v. Kmart Corp.*, 233 F.3d 734, 746 (3d Cir. 2000); *Zaprala v. USI Servs. Grp.*, 2013 U.S. Dist. LEXIS 38377, at *21 (E.D. Pa. Mar. 20, 2013); *Voilas v. GMC*, 73 F. Supp. 2d 452, 461 (D.N.J. 1999).  Thus, in nonscientific cases, "the relevant reliability concerns will focus upon personal knowledge and experience of the witness and the methodology used will be applying that experience to the facts of the case."  *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 286 F.R.D. 266, 269-70 (W.D Pa. 2012) (citations omitted); *see also Crowley v. Chait*, 322 F. Supp. 2d 530, 539 (D.N.J. 2004) (detailing that in nonscientific cases, "the emphasis is placed not on the methodology of the expert testimony, but on the professional and personal experience of the witness"); *Amco Ukrservice v. Am. Meter Co.*, 2005 U.S. Dist. LEXIS 12992, at *5 (E.D. Pa. June 29, 2005) ("Because it is usually impossible to subject nonscientific theories to experimentation, a district court should concentrate on the expert's experience, rather than

methodology.").  In fact, "an expert might draw a conclusion from a set of observations based on extensive and specialized experience."  *Kumho Tire*, 526 U.S. at 156.

Here, in preparing her report, Kraizer not only utilizes her extensive experience in child abuse prevention, but she also draws on the writings of a former priest who has previously testified regarding the sexual abuse of children by clergy ("Doyle"); policy documents available to clergy during the relevant time period; and academic books, articles, and conference speeches concerning the general awareness of the risk of sexual abuse by clergy in during the relevant time period.  Exp. Opp'n at 17-20; *see also* D.E. 61-3 ("Kraizer Report") at 3-6 (outlining methodology and providing reference materials relied upon).  While Defendant claims that Kraizer's methodology is unreliable, Defendant's briefing is devoid of any alternative methodology and does not provide any reason to doubt that Kraizer's reliance on her extensive experience and litany of published reference materials is not an acceptable method of determining the applicable standard of care.  *See West. Am. Ins. Co. v. Jersey Cent. Power & Light Co.*, 2008 U.S. Dist. LEXIS 101153, at *19-24 (D.N.J. Dec. 15, 2008) (allowing non-scientific expert testimony after finding expert's training and experience can provide an adequate and reliable foundation to admit opinion for jury's consideration, even though methods used were not testable, were not subject to peer review, and did not include quantifiable potential rate of error).

Additionally, Defendant argues that Kraizer's reliance on Doyle's writings without independently assessing the validity of his opinions in those writings renders Kraizer's opinions unreliable.  Exp. Mot. at 7; Exp. Reply at 6-7.  Plaintiff responds that Kraizer's reliance on Doyle's writings is appropriate under Rule 703.   Exp. Opp'n at 18-19.  While it is true that experts "may not simply 'parrot' ideas of other experts, they 'are permitted to rely on materials

used by other experts in developing their own opinions.'"  *Leese v. Lockheed Martin Corp.*, 6 F. Supp. 3d 546, 553 (D.N.J. Mar. 17, 2014) (quoting *I.B.E.W. Local Union 380 Pension Fund v. Buck Consultants*, 2008 U.S. Dist. LEXIS 43435, at *8 (E.D. Pa. June 3, 2008)).  Moreover, experts "'may use a mix of objective data and subjective analysis from another expert to . . . create an admissible report,' and the testifying expert's knowledge regarding the underlying facts 'go[es] to the weight accorded to [that expert's] report and testimony, rather than its admissibility.'"  *Id.* (quoting *I.B.E.W. Local Union 380 Pension Fund*, 2008 U.S. Dist. LEXIS 43435, at *8).

Here, Kraizer's reliance on Doyle's writings is permissible.  She does not merely parrot Doyle's writings, but rather relies on his presentation of data and his subjective analysis concerning the historical context and relationship that existed between the Catholic Church and dioceses/religious orders during the relevant time period.  In that vein, Kraizer uses Doyle's writings to assist her in evaluating the risk of child sexual abuse by clergy during the relevant time period, but she does not simply reassert Doyle's opinions as her own.  In fact, Kraizer reviewed the Catholic Church's 1922 and 1962 Instructions, which Doyle heavily relies on in his writings.  *See* D.E. 61-5 at 52:14-21 (outlining certain documents reviewed, including the Catholic Church's 1922 and 1962 Instructions).  Accordingly, Defendant's concerns related to Kraizer's knowledge regarding the underlying facts drawn from Doyle's writings go to the weight of Kraizer's testimony, and may, therefore, be appropriately addressed through vigorous cross-examination.  *See Nichols v. Morrisey*, 2024 U.S. Dist. LEXIS 35628, at *15 (E.D. Pa. Feb. 29, 2024) (citing *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 293 (3d Cir. 2012)) (admitting expert testimony and explaining that "the credibility of [the expert's] use of the underlying expert's report is [a] matter for cross-examination, not for pretrial exclusion");

*Wisconsin v. Indivior, Inc.*, 2021 U.S. Dist. LEXIS 30909, at *43 (E.D. Pa. Feb. 19, 2021) (finding expert's reliance on other opinions of other experts proper).

Finally, to the extent that Defendant disagrees with Kraizer's Report, such questions go to the weight and credibility of Kraizer's Report, not its admissibility; therefore, Defendant may properly test Kraizer's testimony through vigorous cross-examination. *See Voilas*, 73 F. Supp. 2d at 462 ("Indeed, federal courts have generally found that the perceived flaws in an expert's testimony often should be treated as matters properly to be tested in the crucible of the adversarial system, not as the basis for truncating that process [via a motion to exclude an expert's testimony]."). Accordingly, the Court concludes Kraizer's testimony is sufficiently reliable. *See, e.g.*, *Equinox Props., LLC v. Harford Mut. Ins. Co.*, 2023 U.S. Dist. LEXIS 148946, at *12 (D.N.J. Aug. 24, 2023) (finding reliability prerequisite met where proposed expert largely relied on training, experience, and observations in deriving non-scientific methodology).

For the reasons described in this section, the portions of Kraizer's Report that consist of legal conclusions or narrate Plaintiff's deposition testimony do not "fit" the case, and therefore will be excluded.

## III.   MOTION FOR SUMMARY JUDGMENT

### A.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A fact is material if it might

affect the outcome of the case, and a dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nissan World, LLC v. Mkt. Scan Info. Sys.*, 2014 U.S. Dist. LEXIS 59902, at *12 (D.N.J. Apr. 30, 2014) (quoting *Anderson*, 477 U.S. at 248). Facts and inferences must be construed in the light most favorable to the nonmoving party. *Id.* (citing *Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)).

It is the moving party's burden to establish that no genuine dispute of material fact remains. *Celotex Corp.*, 477 U.S. at 322-23. But where the nonmoving party "bears the burden of proof on an issue, 'the burden on the moving party may be discharged by "showing" – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Nissan World, LLC*, 2014 U.S. Dist. LEXIS 59902, at *12 (quoting *Celotex Corp.*, 477 U.S. at 325).

Once the moving party has met its initial burden, the burden shifts to the nonmoving party to "present actual evidence that creates a genuine issue as to a material fact for trial." *Virginia St. Fidelco, LLC v. Orbis Prods. Corp.*, 2016 U.S. Dist. LEXIS 102641, at *6 (D.N.J. Aug. 3, 2016) (citing *Anderson*, 477 U.S. at 248; Fed. R. Civ. P. 56(c)). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "unsupported allegations . . . and pleadings are insufficient to repel summary judgment," *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). Finally, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to [its] case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential

16

element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

**B. Discussion**

Defendant moves for summary judgment on Plaintiff's negligence claim, arguing that Plaintiff cannot establish that a genuine issue of material fact exists as to whether Defendant knew or should have known of Rooney's propensity for sexual abuse during the time period that Plaintiff was being abused. *See* SJ Mot. at 1-3, 6, 10, 12. Plaintiff responds that Defendant had actual notice of Rooney's propensity for sexual abuse following an incident in which a priest or brother walked into the locker room showers where Plaintiff and Rooney were alone and undressed, SJ Opp'n at 18-21; and constructive notice of Rooney's propensity for sexual abuse as well, given that other clergy observed Plaintiff going to and leaving from the off-limits clergy living quarters with Rooney, *id.* at 22-23. The Court concludes that a dispute of material fact exists as to whether Defendant knew or should have known of Rooney's propensity for sexual abuse, such that summary judgment cannot be granted in Defendant's favor.

Regardless of the theory of negligence Plaintiff pursues, *i.e.*, retaining, supervising, training, or warning,[13] a showing that Defendant knew or should have known of Rooney's propensity for sexual abuse is required for Plaintiff to prevail. *See, e.g.*, *Smith v. RB Distrib., Inc.*, 498 F. Supp. 3d 645, 667-69 (E.D. Pa. 2020) (explaining negligent supervision and retention claim against employer requires plaintiff to establish that employer knew or reasonably should have known of employee's propensity for sexual harassment); *D.T. v. Hunterdon Med. Ctr.*, 2012 N.J. Super. Unpub. LEXIS 2204, at *38 (App. Div. Sept. 27, 2012) (noting negligent supervision claim requires showing knowledge of a propensity to dangerous conduct). Thus, the

---

[13] Plaintiff references all of these theories of negligence interchangeably.

Court's analysis focuses on whether a dispute of material fact exists as to whether Defendant had notice of Rooney's propensity for sexual abuse, at the relevant time.[14]   However, whether a defendant had notice of a foreseeable risk is a "question of fact that will vary based on the circumstances," and therefore, it is generally a determination best left for the trier of fact.  *See McKenzie v. U.S. Tennis Ass'n Inc.*, 2024 U.S. Dist. LEXIS 27286, at *12 (M.D. Fla. Feb. 16, 2024) (internal quotation marks and citation omitted).

Here, viewing the evidence in the light most favorable to Plaintiff, there is sufficient record evidence that when taken together would support a finding by the trier of fact that Defendant knew or should have known that Rooney had a propensity for sexual abuse.  First, Plaintiff testified that he was seen by other clergy going to or leaving Rooney's living quarters, an area that was off-limits to students, on at least a few occasions.  *See* S.Y. Dep. at 139:17-140:10, 141:3-8.  Rooney confirmed that the clergy living quarters were off-limits to students.  D.E. 63-3, Ex. C ("Rooney Dep.") at 19:7-11.  Second, Plaintiff testified that on one occasion, he and Rooney were alone in the locked locker room showers, when someone in "black pants and [a] short-sleeved black shirt," "a priest or a brother," but not a student, walked in.  S.Y. Dep. at 135:15-136:24, 149:4-11.  When asked whether he would be in the locker room when students were showering and whether he would also go into the showers when students were showering, Rooney answered in the affirmative to both questions.  Rooney Dep. at 24:17-25.  And when asked whether he recalled Plaintiff showering after cleaning the gym, Rooney testified, "I assume I was there, yes[,]" and that he recalled being alone with Plaintiff.  *Id.* at 32:12-18.

---

[14] Finding sufficient the arguments made in light of the alleged incident in the locker room showers and the alleged incidents in the clergy living quarters, the Court does not reach Plaintiff's additional arguments derived from Kraizer's Report and the testimony concerning Rooney's sexual abuse of others after leaving Don Bosco.

18

While it is not for the Court to weigh the credibility of Plaintiff or Rooney's testimony, a reasonable trier of fact could find that Defendant had reason to know that Rooney had a propensity for sexual abuse based on the testimony that Plaintiff was seen, on several occasions, by other clergy in the off-limits clergy living quarters with Rooney; that Plaintiff and Rooney were seen in the locked locker room showers by a priest or brother; and that Rooney would go into the showers when students were showering.  Therefore, the Court finds that a dispute of material fact exists as to whether Defendant knew or should have known about Rooney's propensity for sexual abuse during the course of the two years that Rooney and Plaintiff overlapped at Don Bosco.[15]  *See Davis v. Rumsey Hall Sch., Inc.*, 2023 U.S. Dist. LEXIS 175144, at *31 (D. Conn. Sept. 29, 2023) (finding that evidence that abuser "was a dorm parent and would spend time alone with students after hours" could lead a reasonable jury to infer that defendant had notice of abuser's propensity for sexual abuse).

Lastly, the two New York state cases that Defendant cites are distinguishable from the pending case.  In *H.H. v. Salesians of Don Bosco*, 2023 NY Slip Op 32909(U), *4-5 (Sup Ct, Westchester County 2020), the court granted summary judgment to the Salesian Society after finding that the knowledge of one priest could not "be imputed to The Salesians" to establish notice because that priest "was not acting in The Salesians' behalf when he failed to act on [the] knowledge [that plaintiff was abused by another priest, since] instead [he] promptly abused plaintiff himself."  Thus, in *H.H.*, aside from the plaintiff reporting the first priest's abuse to the second priest, who also abused him, there were no other opportunities for the Salesian Society to know of the first priest's abuse.  *See generally H.H.*, 2023 NY Slip Op 32909(U), *1-5.  In

---

[15] To the extent that Plaintiff attempts to assert an alternative negligent hiring claim against Defendant, the record evidence does not support such a claim, because all of the evidence preceding Rooney's hiring consists of materials with no direct tie to Rooney, *i.e.*, the Catholic Church's 1922 and 1962 Instructions.

contrast, Plaintiff testified that Rooney sexually abused him over 100 times in locker room showers and clergy living quarters, S.Y. Dep. at 146: 7-10, which would have provided many opportunities for Defendant to have become aware of Rooney's propensity for sexual abuse.

In *Kwitko v. Camp Shane, Inc.*, 2023 NY Slip Op 32910(U), *4-5 (Sup Ct, Westchester County 2020), the court granted summary judgment to the summer camp after considering the "plaintiff[']s conce[ssion] that the abuse always occurred in an office, [was] generally unobserved, and that he did not alert any [of the camp employees] of the abuse[,]" as well as an affidavit by another camper affirming that she saw the plaintiff and the abuser kissing once but did not "report[] any suspicions to anyone [nor did she] observe[] others nearby[,]" and testimony from the camp owners' son did not help the plaintiff's position. However, the court noted that "it was a close call whether the [defendant] ha[d] met its burden [on summary judgment.]" *Id.* at *5. Unlike in *Kwitko*, Plaintiff's abuse did not occur in an office where Plaintiff was allowed to be; instead, a substantial part of the sexual abuse occurred in clergy living quarters, where Plaintiff was not allowed to be and where Plaintiff was observed going to and leaving from by other clergy. Thus, the likelihood that Defendant was on notice of Rooney's propensity for sexual abuse was higher than the defendants in *H.H.* and *Kwitko*.

Accordingly, Defendant's motion for summary judgment will be denied.

## IV.   CONCLUSION

For the reasons set forth above, Defendant's motion to exclude the expert testimony of Plaintiff's standard of care expert will be **DENIED** *in part* and **GRANTED** *in part*. Specifically, the portions of Kraizer's Report that consist of legal conclusions and which merely narrate Plaintiff's deposition testimony will be excluded for lack of "fit" to the case.

Additionally, Defendant's motion for summary judgment will be **DENIED**.   An appropriate Order follows.

Dated: March 21, 2024

_____
Evelyn Padin, U.S.D.J.